UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


VINNIE WILKINS, Individually and
As Administratrix and Personal
Representative for the Estate of
MICHAEL LARAY WILKINS                                            PLAINTIFF


VS.                          Case No. 1:13-cv-01024-SOH


OUACHITA COUNTY, *et al.*                                        DEFENDANTS


## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 41). Plaintiff

has responded. (ECF No. 58). Defendants have replied. (ECF No. 64). This matter is ripe for

the Court's consideration.

## BACKGROUND

On August 4, 2010, Michael Wilkins was arrested and detained in the Ouachita County

Detention Center (the "Detention Center"). On his first day in the Detention Center, Wilkins

completed an inmate medical form indicating his known medical conditions, including high

blood pressure, chest pain, dizziness, and indigestion. Wilkins visited the Cabun Clinic regularly

and received prescription medication while incarcerated at the Detention Center. On or about

March 20, 2011, Wilkins filled out a medical request form reminding the Detention Center that

he needed a follow-up appointment after his February 18, 2011 visit to the doctor. Again, on

March 21, 2011, Wilkins submitted a medical request form asking for a doctor's appointment.

On both occasions, Wilkins received a response that an appointment had been made for him at

the Cabun Clinic. On April 8, 2011, Jailer Davidson took Wilkins to the clinic where they were

told that his appointment was for April 11, 2011 not April 8.  Wilkins asked if he could see someone anyway because he did not feel well.  A nurse came to the lobby and met with Wilkins to discuss his symptoms.  She advised Wilkins and Jailer Davidson that she would check with the doctor to see whether he could see Wilkins.  Shortly thereafter, the nurse returned and informed Wilkins that the doctor would not be able to see him and he would have to return on April 11, 2011 for his scheduled appointment.  Jailer Davidson transported Wilkins back to the Detention Center.

On April 9, 2011, Wilkins filled out a medical request form and asked to go to the doctor or the hospital.  He wrote, "I feel very weak.  I can't eat anything.  I'm very nervous.  I'm dropping my plates and my drinks.  I feel like vomiting but I can't.  I need to go to the hospital.  Seriously I got heartburns [sic].  Please I got headaches [sic]".  (ECF No. 43, Ex. 1, p. 13).  In response to these forms, Wilkins was told that he had an appointment scheduled for April 11, 2011 at 1:30 p.m.

Later that day, Wilkins fell in his cell.  Jailers Sanchez and Garcia each indicated on separate incident reports that Wilkins "faked a fall."  (ECF No. 43, Ex. A, p. 14-15).  They went to check on Wilkins and asked him what had happened.  Wilkins responded that he was going to the bathroom and fell.  They inspected him for any injuries and asked him if he was hurting anywhere.  Wilkins stated that his back was hurting, but Jailers Sanchez and Garcia could not find any sign of injury.  They helped him back to bed and monitored him around the clock.

On April 10, 2011, Wilkins did not want to get out of bed to take his medications.  Eventually he walked to the door of his cell where Officer Wood was waiting with Wilkins' medications, but Wilkins did not speak.  Wilkins held his hand out for his medications but refused to sign the medicine sheet that inmates are required to sign when they receive

medication.  After about ten minutes, Officer Wood told Wilkins to sit back down.  Following this incident, Officer Wood called his supervisor, Lieutenant Bolton, and advised him of Wilkins' behavior.  Lieutenant Bolton told Officer Wood to ask Deputy Mills, the shift supervisor, to assess Wilkins and determine whether Wilkins' situation was serious enough that he needed to go to the emergency room.  Deputy Mills did an evaluation of Wilkins via video monitor.  Deputy Mills determined that Wilkins did not need to go to the emergency room.  Wilkins ate breakfast but did not eat lunch.  Officer Wood checked on Wilkins several times that day.  Officer Wood noted that Wilkins was not speaking in complete sentences, but he considered that common for Wilkins because he was on a lot of medication.

On the evening of April 10, 2011, Jailor Garcia noticed Wilkins looked as though he was not breathing.  Jailors Garcia and Sanchez entered Wilkins' cell and found him unresponsive.  Jailor Sanchez could not find a pulse and could not hear his heart beating when he put his ear to Wilkins' chest.  Jailer Sanchez immediately called dispatch to send an ambulance.  The paramedics made unsuccessful attempts to revive Wilkins in the ambulance.  Shortly after Wilkins arrived at the hospital, he was pronounced dead.

On March 7, 2013, Plaintiff Vinnie Wilkins, as the Administratrix of the Estate of Michael Laray Wilkins, filed her Complaint in this case.  She alleges that pursuant to 42 U.S.C. § 1983, her husband's constitutional rights were violated when Defendants were deliberately indifferent to his serious medical needs.  Plaintiff filed claims against Ouachita County, Arkansas; David Norwood in his individual capacity and official capacity as Sheriff of Ouachita County, Lieutenant Joe Strickland in his individual capacity and official capacity as Chief Deputy of Ouachita County; and Lieutenant James Bolton in his official capacity as Jail

3

Administrator for Ouachita County.   Her Complaint also includes claims for negligence, wrongful death, and conspiracy.

## LEGAL STANDARD

The standard of review for summary judgment is well established.  When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir. 1995).  This is a "threshold inquiry of…whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987).  A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

## DISCUSSION

Defendants Norwood and Strickland contend that summary judgment should be granted in their favor because they are entitled to qualified immunity on the claims asserted against them in their individual capacities.  Plaintiff argues that qualified immunity does not apply because Defendants Norwood and Strickland provided inadequate training and supervision at the Detention Center that proximately caused Wilkins' death.  Defendant Ouachita County and Defendants Norwood, Strickland, and Bolton assert that they are entitled to summary judgment on Plaintiff's claims asserted against them in their official capacity because there was no

unlawful policy or custom that was the moving force behind Wilkins' death.  Plaintiff maintains that the Detention Center had a practice of denying medical care to detainees.

### A.  Individual Liability Claims

#### 1.  Individual Liability of Defendant Norwood

Defendants argue that Plaintiff fails to provide any evidence that Defendant Norwood was personally involved in Wilkins' medical care, and therefore he is entitled to qualified immunity.  "Qualified immunity protects a government official from liability in a § 1983 claim unless his or her conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known."  *Pool v. Sebastian County, Ark.*, 418 F.3d 934, 942 (8th Cir. 2005).  To determine whether a defendant official is entitled to summary judgment, courts in the Eighth Circuit ask: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted.  *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006).  District courts may consider these questions in any order, but cannot deny qualified immunity without answering both questions in plaintiff's favor.  *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014).  With regard to the first inquiry, the Fourteenth Amendment gives state pretrial detainees rights which are "at least as great as the Eighth Amendment protections available to a convicted prisoner."  *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).  The Constitution affords greater protection to a pretrial detainee than a convicted inmate because "[d]ue process requires that a pretrial detainee not be punished."  *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)).

A pretrial detainee has a well-established right not to have "known, objectively serious medical needs disregarded." *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014); *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006) (noting that the Eighth circuit has "repeatedly applied the deliberate indifference standard . . . to pretrial detainee claims").   For a violation, a plaintiff must show that (1) the pretrial detainee suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs. *Fourte*, 746 F.3d at 387.  The Eighth Circuit has defined a serious medical need as "one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 851 (8th Cir. 2006).  Deliberate indifference is "more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."  *Fourte*, 746 F.3d at 387. "Rather, a plaintiff must demonstrate the official actually knew of the risk and deliberately disregarded it." *Id.*

Defendants argue that despite suing Defendant Norwood in his individual capacity, Plaintiff makes no specific allegations of deliberate indifference to serious medical needs against Defendant Norwood.  Plaintiff has acknowledged that Defendant Norwood was not directly involved in Wilkins' care.  (ECF No. 60, ¶ 18).  Plaintiff does not contend that Defendant Norwood had actual knowledge of Wilkins' serious medical needs and that he deliberately disregarded those needs.  Accordingly, Plaintiff cannot sustain an individual capacity claim against Defendant Norwood based on his personal knowledge or involvement in Wilkins' care.

Next, Plaintiff maintains that despite Defendant Norwood's lack of direct involvement in Wilkins' care, Defendant Norwood was responsible for hiring, budgeting, contracting, training, and establishing policies for the Detention Center.  Defendant Norwood may be held individually

liable under § 1983 if Plaintiff can prove that Defendant Norwood personally knew of the constitutional risk posed by inadequate training or supervision and proximately caused Wilkins injury by failing to take sufficient remedial action.  *See Walton*, 752 F.3d at 1116.  "The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts."  *Wever v. Lincoln County, Nebraska*, 388 F.3d 601, 606 (8th Cir. 2004).

Plaintiff cites to three other lawsuits filed against Defendant Norwood and Ouachita County and a medical request form submitted by another detainee in an effort to demonstrate Defendant Norwood's failure to train.  Plaintiff cites to these cases as evidence that there were three deaths in the Detention Center in an eighteen month period.  However, only one of the lawsuits involved the death of a detainee, and the detainee did not arrive at the Detention Center until three months after Wilkins had died.  Similarly, the events that transpired in the second lawsuit occurred after Wilkins' death.  Therefore, these lawsuits are not probative of the issues in this case.  *See Liebe v. Norton*, 157 F.3d 574, 580 (8th Cir. 1998).  The third lawsuit was dismissed for the plaintiff's failure to prosecute the action.  Plaintiff does not explain how any of these lawsuits should have given Defendant Norwood notice of inadequate training and supervision that proximately caused Wilkins death.  Thus, viewing the facts in a light most favorable to Plaintiff, the Court finds that these lawsuits are insufficient to show that Defendant Norwood knew of the constitutional risk posed by inadequate training or supervision at the time of Wilkins' death.

The medical request form also proves insufficient to establish a failure to supervise or train.  The request form reflects that a detainee claimed that he had had a burn for eighteen days and needed to see a doctor.  He was taken to the doctor three days later.  It is not clear from the record whether the detainee had previously requested to go to the doctor or whether the burn was

a serious medical need.  It is not evident from these facts that any "remedial training" was required to prevent a constitutional violation.  Furthermore, Plaintiff has no evidence that Defendant Norwood knew of this particular request form.  No reasonable jury could find the medical request form sufficient to demonstrate that Defendant Norwood personally knew of some constitutional risk posed by inadequate training or supervision.  Thus, Defendant Norwood is entitled to qualified immunity on the individual capacity claims asserted against him.

### 2.   Individual Liability of Defendant Strickland

Defendants maintain that Defendant Strickland is entitled to qualified immunity.  Plaintiff does not argue that Defendant Strickland was deliberately indifferent to Wilkins' serious medical needs but asserts that Defendant Strickland, like Defendant Norwood, failed to supervise and train the Detention Center jailers.  Plaintiff makes the same arguments that he did in alleging that Defendant Norwood knew of the constitutional risk posed by inadequate training or supervision.[1] Plaintiff presents no evidence that there was conduct by jailers that gave Defendant Strickland notice that remedial training was required to prevent a constitutional violation, nor is there any evidence that Defendant Strickland knew of the request forms.  Thus, no reasonable jury could find that Defendant Strickland personally knew of some constitutional risk posed by inadequate training or supervision.  Accordingly, it cannot be said that his actions proximately caused Wilkins' death.  Therefore, Defendant Strickland is entitled to qualified immunity on the individual capacity claims asserted him.

---

[1] Additionally, citing Defendant Strickland's affidavit, Plaintiff states that Defendant Strickland admitted that he was kept in the loop after taking Wilkins to the doctor's office on April 8, 2011.  However, in his affidavit, Defendant Strickland states, "Between April 8, 2011 and April 11, 2011, I was not personally involved in the medical care of Michael Wilkins, I did not communicate with Mr. Wilkins nor was I contacted by jail staff about any medical questions concerning Mr. Wilkins."  (ECF No. 43, Ex. No. 6).

### B.  County and Official Capacity Claims

Plaintiff asserts claims against Defendants Norwood, Strickland, and Bolton in their official capacities.  She contends that the Detention Center has an unwritten, unconstitutional policy of denying detainees' access to medical care.  Plaintiff further alleges that Defendant Ouachita County's inadequate training of Detention Center employees resulted in Wilkins' death.  Defendants argue that the Detention Center's policies and customs are constitutional, and Plaintiff cannot establish that Wilkins' constitutional rights were violated.

It is well-settled that a § 1983 claim against a government employee in his or her official capacity is actually a suit against the entity for which the official is an agent.  *See Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).  A plaintiff may sustain a claim against the county where a constitutional violation has been committed pursuant to an official custom, policy, or practice. *Luckert v. Dodge County*, 684 F.3d 808, 820 (8th Cir. 2012).  The custom, policy, or practice must be the "moving force" behind the violation.  *Id.*  Furthermore, the plaintiff must demonstrate "not only that a policy or custom existed, and that it was causally related to the plaintiff's injury, but that the policy itself was unconstitutional."  *Id.*  A county may be liable for policies and practices regarding training and supervision where "(1) the [county's] ... training practices [were] inadequate; (2) the [county] was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by [the county]'; and (3) an alleged deficiency in the ... training procedures actually caused the plaintiff's injury."  *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

There is no evidence of an unlawful written policy.  The evidence that Plaintiff offers to support her allegations of an unlawful custom is identical to the evidence she presents to support

her failure to train claim against Defendants.  Plaintiff points to three other lawsuits that were filed against Defendants.  However, as previously discussed, the events leading up to two of these lawsuits occurred after Wilkins' death, and therefore are not of any probative value to this case.  *See Liebe v. Norton*, 157 F.3d 574, 580 (8th Cir. 1998).  The third lawsuit was dismissed because of the plaintiff's failure to prosecute the action.  Therefore, Plaintiff has not offered any evidence of a custom that was a "moving force" behind Wilkins' death or inadequate training or supervision that proximately caused Wilkins' death.  Accordingly, the Court finds that summary judgment should be granted in favor of Defendant Ouachita County and Defendants Norwood, Strickland, and Bolton in their official capacities.

### C.  Negligence, Wrongful Death, and Conspiracy Claims

Defendants have also moved for summary judgment on the state law claims.  However, as the Court has granted summary judgment in their favor on the only federal law claims, the Court declines to retain jurisdiction over the state law claims.  28 U.S.C. § 1367(c)(3).

### CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 41) is **GRANTED**.  Plaintiff's negligence, wrongful death, and conspiracy claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**,  this 24th day of July, 2015.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge